IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARY IRENE JENKINS | ) | |
| | ) | |
| Plaintiff (*pro se*), | ) | |
| | ) | |
| v. | ) | Civil Action No. WGC-12-2313 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Mary Irene Jenkins ("Ms. Jenkins" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 4, 7-8.[1] Pending and ready for resolution is Defendant's Motion for Summary Judgment (ECF No. 13).[2] No hearing is deemed necessary.

---

[1] The case was subsequently reassigned to the undersigned.

[2] On January 2, 2013 a scheduling order was entered. *See* ECF No. 12. Plaintiff's motion for summary judgment was due March 15, 2013. Plaintiff did not file a motion. Plaintiff's reply memorandum was due June 4, 2013. Plaintiff did not file a reply.

On May 8, 2013 the Clerk's Office sent a Rule 12/56 letter to Plaintiff. That letter states in pertinent part,

> The Defendant(s), Commissioner, Social Security, has filed a motion to dismiss or for summary judgment. If this motion is granted, it could result in the dismissal of your case or the entry of judgment against you.
>
> **You have the right to file a response to this motion within seventeen (17) days from the date of this letter.**

*See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted.

1. **Background**.

On August 28, 2008 Ms. Jenkins filed applications for DIB[3] and SSI alleging a disability onset date of June 17, 2006 due to back impairment and left leg impairment. R. at 12, 222-28, 261. Ms. Jenkins' applications were denied initially on November 19, 2008. R. at 89-96. On January 5, 2009 Ms. Jenkins requested reconsideration. R. at 102, 104-05. On June 19, 2009 the claims were denied again. R. at 106-09. On July 2, 2009 Ms. Jenkins requested a hearing by an Administrative Law Judge ("ALJ"). R. at 110-11.

On September 1, 2010 the ALJ convened a hearing. R. at 25-38. Ms. Jenkins appeared without any representation. The ALJ advised Ms. Jenkins about her rights to a representative (either counsel or non-attorney representative). Ms. Jenkins elected to obtain a representative. The ALJ therefore continued the hearing to permit Ms. Jenkins to obtain a representative.

On February 17, 2011 the ALJ convened a second hearing. R. at 39-49. Ms. Jenkins appeared with a non-attorney representative, Ms. Winrick. During this second hearing Ms. Winrick requested a consultative examination due to damage to Ms. Jenkins' left shoulder resulting from an assault. R. at 44-45. The ALJ granted the request. In reviewing Ms. Jenkins' record, the ALJ noted her 9th grade education. The ALJ, *sua sponte*, ordered a consultative examination for psychological testing. R. at 45-46. The necessity of a supplemental hearing would depend on the results of the consultative examinations. R. at 47.

---

ECF No. 14 at 1.

The May 8, 2013 letter was mailed to Plaintiff's address of record in La Plata, Maryland. Plaintiff did not file anything in response.

[3] "The claimant meets the insured status requirements of the Social Security Act through December 31, 2011." R. at 14. *See* R. at 257.

On July 8, 2011 a supplemental hearing was convened. R. at 50-82. Ms. Jenkins appeared and was represented by Ms. Winrick, non-attorney representative. The ALJ obtained testimony from Ms. Jenkins and a vocational expert ("VE"). In the August 3, 2011 decision the ALJ found Ms. Jenkins has not been under a disability, as defined by the Act, from June 17, 2006 through the date of the decision. R. at 19. Ms. Jenkins requested a review of the hearing decision. R. at 7. On June 5, 2012 the Appeals Council denied Ms. Jenkins' request for review, R. at 1-6, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Jenkins' claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Ms. Jenkins bears the burden of demonstrating her disability as to the first four steps. At step five the burden shifts to the Commissioner. If Ms. Jenkins' claims fail at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At step one the ALJ found Ms. Jenkins has not engaged in substantial gainful activity since June 17, 2006, the alleged onset date of disability.[4] R. at 14. The ALJ concluded at step two that Ms. Jenkins has the following severe impairments: obesity, back pain and shoulder pain. R. at 15. With regard to Ms. Jenkins' obesity the ALJ noted, "the claimant stated her weight was 212 pounds and height was five feet and five inches. That equates to a body mass index score of 35.3. A score of 30 or higher is generally accepted as f[alling] within the obesity category." *Id.*

The ALJ further determined Ms. Jenkins has the following non-severe impairments: high blood pressure and high cholesterol, bronchitis and lacerations. *Id.* The ALJ found Ms. Jenkins' high blood pressure and high cholesterol non-severe because these impairments are under control

---

[4] "The claimant worked after the established disability onset date, but this work activity did not rise to the level of substantial gainful activity." R. at 15.

3

with medication and there is no evidence in the record of any complications associated with these impairments. The ALJ found Ms. Jenkins' bronchitis non-severe because Ms. Jenkins had one episode only of "acute" bronchitis documented in the record. The ALJ noted Ms. Jenkins "does smoke tobacco products, but there is no evidence of a severe impairment as a result." *Id.* (citation omitted). As for the lacerations, these were the result of an assault. Ms. Jenkins was treated at the hospital and released the same day. "The incident was a single occurrence and sutures were removed and the injuries described as 'well healed' on June 19, 2010." *Id.* (citation omitted).

At step three the ALJ determined Ms. Jenkins does not have an impairment or combination of impairments that meets or medically equals the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. "The medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, singly or combined." R. at 15.

Next the ALJ determined Ms. Jenkins' residual functional capacity ("RFC"). The ALJ found Ms. Jenkins "has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She is able to understand, remember and execute simple instructions." R. at 15.

At step four the ALJ found, in light of the VE's testimony, the demands of Ms. Jenkins' past relevant work (a variety of positions with a fast food restaurant including grill cook) exceed Ms. Jenkins' RFC. R. at 18. At step five the ALJ considered Ms. Jenkins' age (43 years old on the alleged disability onset date), her education (limited; 9th grade; able to communicate in English), past work experience (transferability of job skills is not an issue) and her RFC (less

than the full range of light work, restricted to simple, routine work). The ALJ found the Social Security Administration met its burden of proving that Ms. Jenkins is capable of performing various other jobs[5] that exist in significant numbers in the national economy, relying on the testimony of the VE. R. at 19, 77-79. Accordingly, the ALJ concluded that Ms. Jenkins is not disabled within the meaning of the Act. R. at 19.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

4. **Discussion**.

Although Ms. Jenkins has not filed a motion for summary judgment nor a reply in response to Defendant's motion for summary judgment, this court nonetheless is required to

---

[5] A router and a small product assembler at the light exertional level; an addresser and a final assembler at the sedentary exertional level. *See* R. at 19, 77-78. In response to a second hypothetical question regarding a hypothetical individual limited to sedentary work with a sit/stand option, the VE identified the occupations of addresser, file assembler and document preparer. R. a 78-79.

review the ALJ's conclusions and determine whether they are legally correct. *See Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).

   A.   Step 2 Analysis

At step two the ALJ found Ms. Jenkins has three *severe* impairments: obesity, back pain and shoulder pain. The ALJ further found Ms. Jenkins has the following *non-severe* impairments: high blood pressure and high cholesterol, bronchitis and lacerations. R. at 15. In assessing Ms. Jenkins' RFC, the ALJ determined Ms. Jenkins "is able to understand, remember and execute simple instructions." *Id.* The ALJ's determination of Ms. Jenkins' ability to understand instructions derives from a consultative psychological evaluation. *See* R. at 587-94. The ALJ summarized and evaluated that record as follows,

> Dr. Teresa Trabue, Psy.D. conducted a psychological evaluation of the claimant in April 2011 and found the claimant's cognitive abilities to fall within the borderline range with the [exception] of her average range auditory memory. She opined that the claimant still has the capacity to manage her affairs. I give significant weight to this evaluation and opinions contained within the report. Considering all potential issues that a person with a reduced functional ability would have, the undersigned finds the claimant restricted to simple, routine work.

R. at 18 (citation omitted).

Ms. Jenkins did not allege any mental impairments when she filed her applications for DIB and SSI.

> Although not specifically alleged to, there is evidence in the record that the claimant functions at a borderline intellectual level. The medical evidence regarding the extent of the claimant['s] intellectual functioning on her ability to perform related tasks is limited. However, considering all potential issues that a person with a reduced functional ability would have, the undersigned finds the claimant restricted to simple, routine work.

R. at 17 (citation omitted).

Even though the ALJ failed to identify Ms. Jenkins' borderline intellectual functioning at step two, he ensured a complete medical history of Ms. Jenkins was developed. "[B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2011). The ALJ recognized the possibility of a mental impairment.

> ALJ: But I'm pausing because I'm wondering, I see, according to what I have your client has a ninth grade education.
>
> ATTY: That's correct.
>
> ALJ: I'm wondering if we can do some other kinds of testing [*i.e.,* consultative examination], too?
>
> ATTY: That would be fine, too.

R. at 45 (Hearing of February 17, 2011).

The court finds the ALJ erred by not identifying Ms. Jenkins' borderline intellectual functioning as a non-severe impairment at step two. This error however was harmless since the ALJ included this impairment in assessing Ms. Jenkins' RFC. "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Because the limitations caused by Ms. Jenkins' borderline intellectual functioning were incorporated as part of her RFC, these limitations were fully considered at steps four and five.

B. *Step Three Analysis*

At step three the ALJ found Ms. Jenkins does not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment. The ALJ's decision however does not indicate the specific listed impairments he considered for Ms. Jenkins' obesity, back pain and shoulder pain. The ALJ nevertheless sufficiently explained his evaluation of Ms. Jenkins' impairments. *See* R. at 16-17. The ALJ therefore did not need to state explicitly why Ms. Jenkins' impairments do not meet specific listings. *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) ("Under *Cook* [*v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986)], the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments.").

C. *Weight Assigned to Consultative Examiner's Opinion*

Ms. Jenkins' non-attorney representative requested a consultative examination.

> ATTY: Thank you, Your Honor. I just wanted to discuss the potentiality of having a CE done for my client, based on the fact she was assaulted and had damage done to her left shoulder. She does complain of more limitations based on that. The last CE that was done was done in June of 2009, which was a year prior to the assault. So, the limitations that are in the record right now are not based on her current state.
>
> ALJ: Okay, when was this?
>
> ATTY: The assault, Your Honor? I believe it was May 30th or June 1st of 2010.
>
> CLMT: It was June 1st.
>
> ALJ: May?
>
> ATTY: June.
>
> CLMT: It was at 10:30 p.m.

>               ATTY:        June 1st, Your Honor.
>
>               ALJ:         Okay.  Hang on a second.  Okay.  I will grant that.

R. at 44-45 (Hearing of February 17, 2011).

Nalin Mathur, M.D. examined Ms. Jenkins on April 6, 2011.  R. at 584.  Dr. Mathur diagnosed (a) chronic lumbar pain, (b) osteoarthritis of the left shoulder and (c) hypertension.  R. at 583.  It is unclear whether Dr. Mathur assessed Ms. Jenkins' range of motion.  If Dr. Mathur made such an assessment, Dr. Mathur failed to memorialize those findings on the Range of Motion Values form.  *See* R. at 585-86.  Finally, in conjunction with the examination, Dr. Mathur completed the *Medical Source Statement of Ability to Do Work-Related Activities (Physical)* form.  R. at 595-601.

In his decision the ALJ noted the lack of thoroughness by the consultative examiner, Dr. Mathur.

> The undersigned found Dr. Mathur's overall assessment to be lacking.  The doctor failed to complete a full complement of range of motion tests, merely returning the documents without completing them, basing almost all of her report on the self reporting of the claimant and her symptoms, as well as failing to review the claimant's prior medical records and x-rays.

R. at 16.

Dr. Mathur opined Ms. Jenkins is limited to working less than full-time due to her impairments.  R. at 596.  The doctor noted Ms. Jenkins has problems using her left arm due to pain in her shoulder.  R. at 597.  Dr. Mathur further opined Ms. Jenkins cannot climb ladders or scaffolds, kneel, crouch or crawl due to knee tenderness.  R. at 598.  The ALJ assigned only "some weight" to Dr. Mathur's opinion because,

> [Dr. Mathur] based his[6] assessment primarily on the claimant's subjective statements and not any objective findings. This physician failed to perform a complete range of motion test and failed to review any medical evidence from treating physicians or the numerous x-rays and MRIs contained in the record. Nonetheless the undersigned considers the record as a whole and adopts, as above, a restrictive residual functional capacity based on the record, giving claimant the benefit of many doubts.

R. at 17 (footnote omitted).

The record as a whole has a passing reference or two about Ms. Jenkins' knee tenderness or pain. The record as a whole reflects Ms. Jenkins' history of shoulder pain. Substantial evidence supports the weight the ALJ accorded to Dr. Mathur's opinion.

### D. *Step Five Analysis*

The ALJ presented two hypothetical questions to the VE. The first hypothetical question concerned a hypothetical individual of the same age, the same limited education and the same work experience as Ms. Jenkins. The hypothetical individual has the residual functional capacity to perform light and sedentary work and has an additional limitation, specifically, only work where the hypothetical individual would be able to remember, understand and execute simple instructions. R. at 76. The VE identified representative jobs in the national economy, both at the light exertional level and the sedentary exertional level, the hypothetical individual could perform. R. at 77-78.

The second hypothetical question presupposed a hypothetical individual of the same age, the same limited education and the same work experience as Ms. Jenkins. The hypothetical individual has the residual functional capacity to perform sedentary work only. The hypothetical individual is limited to performing work where the hypothetical individual would be able to remember, understand and execute simple instructions. The ALJ added one additional

---

[6] The ALJ refers to Dr. Mathur as a *male* and as a *female*.

restriction: "[t]his hypothetical individual must have a sit/stand option and by that I mean must be able to change position every twenty minutes." R. at 78. The VE identified representative unskilled occupations in the national economy the hypothetical individual could perform. R. at 79. The court finds the ALJ's determination at step five is in accordance with the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

5. **Conclusion.**

Substantial evidence supports the decision that Ms. Jenkins is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted.

Date: February 27, 2014 _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE